IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Jamie Manning, | ) | C.A. No. 6:22-955-HMH-KFM |
| | ) | |
| Plaintiff, | ) | **OPINION & ORDER** |
| | ) | |
| vs. | ) | |
| | ) | |
| Meridian Waste Holdings, LLC and | ) | |
| Meridian Waste South Carolina, LLC, | ) | |
| collectively d/b/a Meridian Waste, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court with the Report and Recommendation of United States Magistrate Judge Kevin F. McDonald, made in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 of the District of South Carolina.[1] Jamie Manning ("Manning") alleges race discrimination and retaliation claims against his former employer, Meridian Waste South Carolina, LLC, and Meridian Waste Holdings, LLC d/b/a Meridian Waste (collectively "Meridian Waste"), under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended by the Civil Rights Act of 1991, 42 U.S.C. 2000(e), et seq., and 42 U.S.C. § 1981. Defendants filed a motion for summary judgment on January 6, 2023. (Mot. Summ. J., ECF No. 36.) Magistrate Judge McDonald recommends granting Defendants' motion for summary judgment. (R&R, ECF No. 52.) Manning filed objections to the Report and Recommendation.

---

[1] The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. See Mathews v. Weber, 423 U.S. 261, 270 (1976). The court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1) (2006).

1

(Objs., ECF No. 54.) Defendants filed a reply on April 14, 2023. (Reply, ECF No. 57.) After review, the court adopts the magistrate judge's Report and Recommendation and grants Defendants' motion for summary judgment.

### I. FACTUAL AND PROCEDURAL HISTORY

In mid-2019, Manning, an African American male, was hired by Ace Environmental ("Ace") as a roll-off driver to work at its Greer, South Carolina location. (Am. Compl. ¶ 8, ECF No. 11); (Mot. Summ. J. Ex. B (Manning Dep. 30), ECF No. 36-3.) In February 2021, Defendants purchased Ace, including its equipment and personnel. (Id. Ex. B (Manning Dep. 31, 36), ECF No. 36-3); (Id. Ex. F. (30(b)(6) Dep. 14, 36-37), ECF No. 36-7.) In May 2021, Defendants acquired another company, Eco Waste ("Eco"), located in Powdersville, South Carolina. (Id. Ex. F. (30(b)(6) Dep. 49), ECF No. 36-7.) (Am. Compl. ¶ 9, ECF No. 11.) Defendants transferred the roll-off department, including Manning, to the Powdersville location in July 2021. (Mot. Summ. J. Ex. B (Manning Dep. 31), ECF No. 36-3.); (Id. Ex. F. (30(b)(6) Dep. 15), ECF No. 36-7.) Tyvon Junne ("Mr. Junne") and Angel Lopez ("Mr. Lopez"), both roll-off drivers and persons of color, were also among those transferred to the Powdersville location. (Resp. Opp'n Summ. J. 3 and Ex. 1 (Manning Dep. 83), ECF Nos. 44, 44-1.)

With respect to the assignment of trucks, Manning testified that supervisors are responsible for the assignments. (Id. Ex. 1 (Manning Dep. 81), ECF No 44-1). However, Patrick Messinger ("Mr. Messinger"), Defendants' South Carolina area president and Rule 30(b)(6) witness, testified that following an acquisition, drivers typically continue to drive the same vehicle that they were driving at the time of the acquisition. (Mot. Summ. J. Ex. F (30(b)(6) Dep. 33-34), ECF No. 36-7.) Manning testified that when he transferred to the

2

Powdersville location, he thought that the trucks from Greer were also transferred. (Id. Ex. B (Manning Dep. 81), ECF No. 36-3.) Mr. Lopez testified in his deposition that the employees who moved to Powdersville drove the same trucks that they had been driving in Greer. (Resp. Opp'n Ex. 2 (Lopez Dep. 19), ECF No. 44-2.) Manning and Mr. Lopez noted that they were driving older trucks with numerous problems, even though Defendants had newer and nicer Eco trucks available in Powdersville. (Id. Ex. 2 (Lopez Dep. 19-20), ECF No. 44-2); (Mot. Summ. J. Ex. B (Manning Dep. 80-82), ECF No. 36-3.) Further, Manning and Mr. Lopez testified that newly hired Caucasian employees were assigned the newer and nicer trucks. (Resp. Opp'n Summ. J. Ex. 1 (Manning Dep. 152), & Ex. 2 (Lopez Dep. 22, 28), ECF Nos. 44-1, 44-2.).

In June 2021, approximately five months after he began working for Defendants, Manning completed an employee feedback form. In response to a question asking what he liked about his job, Manning noted that "[t]he culture is changing from what Ace had established. [Defendants are] setting out to create a work environment that is fair for everyone involved." (Mot. Summ. J. Ex. H (Feedback Form), ECF No. 36-9.) Manning later confirmed this belief in his deposition. (Id. Ex. B (Manning Dep. 74-75), ECF No. 36-3.) Further, in the feedback form, Manning raised concerns regarding the Ace trucks, including the trucks' age and maintenance issues. (Id. Ex. H (Feedback Form), ECF No. 36-9.) In response, Mr. Messinger forwarded Manning's feedback form to another employee stating, "Attached is feedback from [Plaintiff], our best roll-off driver in Greer. . . . I wanted you to see this one first to see if we can move forward with getting Eco's spare trucks on routes quicker than we talked about yesterday." (Id. Ex. H (Resp. Feedback Form 2), ECF No. 36-9.) Manning testified that he had a good working

3

relationship with Mr. Messinger and agreed Mr. Messinger was attempting to obtain access to a nicer truck for him. (Id. Ex. B (Manning Dep. 72-73), ECF No. 36-3.)

Manning alleges that he lodged various complaints throughout his employment at the Powdersville location about general maintenance issues with the roll-off trucks. Further, Mr. Lopez reported to Mr. Messinger that he heard an employee use the word "spic," a "derogatory word . . . you would use for Mexicans or Puerto Ricans," in reference to Hispanic employees. (Reply Ex. D (Lopez Dep. 25), ECF No. 51-4.) Mr. Messinger asked Manning about this around August 2021, and Manning confirmed that he had heard the word "wetback" used. (Resp. Opp'n Summ. J. Ex. 1 (Manning Dep. 110), ECF No. 44-1.) I don't see this at all in 44-4, there are no pages 63, 88 there Moreover, Manning reported to a supervisor, whose name he could not remember, that trucks were not being assigned fairly because he had more years of experience than the newly hired employees who received nicer trucks. (Mot. Summ. J. Ex. B (Manning Dep. 106-07), ECF No. 36-3.) Although Manning could not recall if he specifically reported that the truck assignments were unfairly assigned based on race,, he testified that he "made sure that [was] how it came across." (Id. Ex. B (Manning Dep. 107-09, 159-60), ECF No. 36-3.) Manning also reported to Mr. Messinger that the trucks were being assigned unfairly, but could not recall if he specifically informed Mr. Messinger that the trucks were unfairly assigned based on race. (Id. Ex. B (Manning Dep. 113-114), ECF No. 36-3.) Manning testified as follows:

> I just recall telling him about, you know, that the way they was giving out trucks is not normal, . . . . I mean, if - - so if I'm working somewhere at the location for two years, and it's a better truck than I am driving and I have got more experience, I have been there longer, I know how to keep up a better - - a truck than - - you know, you would think - - I would think that you would, you know, put that good truck in the

> person's hands that's been there the longest. You know, you probably want - - you want to make them - - you know, you have been there for a while, you know, that's what I think is normal, in my opinion, you would go based off seniority, experience, stuff like that.

(Id. Ex. B (Manning Dep. 114), ECF No. 36-3.) Later in his deposition he testified about his conversation with Mr. Messinger:

> I really can't remember everything, but I remember him saying he was - - he said that, no they just got an ego. And I'm pretty sure my response - - I'm pretty sure, as far as - - as far as I can remember, I told him - - I was telling him that it was racist, and that's why he said it's ego. I can't really remember the whole conversation, like, put it all together, but I remember him saying, like, no, it's ego, because they said they wouldn't wear the Meridian uniforms, they wasn't ever going to put them on, they wasn't going to put Meridian on the trucks, that they wasn't going to comply to Meridian, you know. . . . I can't actually remember everything, but for him to say it was ego, they just got an ego, it was in response to me saying that it was - - that they are racist.

(Id. Ex. B (Manning Dep. 155-56), ECF No. 44-1.) In addition, Manning testified that he "[did not] know why they fired me." (Mot. Summ. J. Ex. B (Manning Dep. 115), ECF No. 36-3.) Mr. Messinger, however, testified that Manning never complained to him about race discrimination. (Id. Ex. F (30(b)(6) Dep. 76), ECF No. 36-7.)

On September 8, 2021, while at a transfer station in Greer, Manning backed into another company's truck, causing the other truck's windshield to crack and denting its frame. (Id. Ex. B (Manning Dep. 84, 87), Ex. J (Payroll Termination Form and Incident Report), & Ex. F (30(b)(6) Dep. 18, 21), ECF Nos. 36-3, 36-7, 36-11.)[2] Mr. Messinger testified that when an employee is involved in an accident, Defendants conduct a "holistic . . . investigation" in determining whether to terminate the employee or discipline the employee through additional

---

[2] Prior to this accident, Manning was also involved in another accident at a customer site where his truck struck a tree limb, which fell and damaged the tarp arm on the truck. (Mot. Summ. J. Ex. F (30(b)(6) Dep. 22), ECF No. 36-7.)

5

safety coaching.  (Id. Ex. F (30(b)(6) Dep. 58-59), ECF No. 36-7.)  As part of this review, Mr. Messinger stated that he considers the employee's version of events, the police report, damages, input from witnesses, and whether there was a risk of severe physical injury.  (Id. Ex. F (30(b)(6) Dep. 58-60), ECF No. 36-7.)  In this case, Mr. Messinger spoke with Manning, the owner of the company that owned the other truck, and reviewed the police report.  (Mot. Summ J. Ex. F (30(b)(6) Dep. 21), ECF No. 36-7.)  Mr. Messinger testified that the decision to terminate Manning was based on the severity of the accident, Manning's violation of Defendants' policies regarding "backing the truck," and the facts that the accident occurred at a transfer station, "a high level of danger area," and that the other truck was occupied, meaning the driver could have suffered significant harm.  (Id. Ex. F (30(b)(6) Dep. 21, 23-24), ECF No. 36-7.)

Defendants have produced a copy of their handbook.  The "Employee Conduct and Work Rules" section provides a non-exhaustive list of improper conduct that could subject an employee to disciplinary action, up to and including immediate discharge.  (Id. Ex. A (Employee Handbook 13-14), ECF No. 36-2.)  Specifically, this section states that an employee may be discharged for failing to follow safety rules and regulations, as well as for failing to follow the procedures and guidelines set forth in Defendants' Safety and Loss Prevention Manual ("Safety Manual").  (Id. Ex. A (Employee Handbook 13-14), ECF No. 36-2.)  Manning signed an acknowledgment that he had received a copy of the Safety Manual.  (Id. Ex. B (Manning Dep. 59), ECF No. 36-3.)  The Safety Manual addresses accidents and provides that with respect to vehicle backing,"[a]ll employees must strive to eliminate and/or reduce the number of backing situations they encounter.  Failure to do so may lead to immediate release from employment."

6

(Mot. Summ. J. Ex. D (Safety Manual 8), ECF No. 36-5.) The Safety Manual includes a list of 13 procedures that employees should follow when backing, including scanning mirrors, being alert to changing conditions, and being prepared to stop. (Id. Ex. D (Safety Manual 7-8), ECF No. 36-5.) The Safety Manual also contains a policy regarding safety at transfer stations and cautions drivers to be particularly careful while disposing of waste at these sites. (Id. Ex. D (Safety Manual 10-11, ECF No. 36-5.) Manning testified in his deposition that he could not recall what the driver of the other truck was doing at the time of the accident or if he checked all of his mirrors before he started backing. (Id. Ex. B (Manning Dep. 95), ECF No. 36-3.)

In addition, the Defendants have produced information regarding other employees that have been involved in accidents since February 2021. (Id. Ex. L (Other Accidents), ECF Nos. 36-13, 50-1). These records reflect a range of discipline for employees. Specifically, the records reveal that five African American employees were involved in accidents and were not disciplined as a result. (Mem. Supp. Summ. J. 10-13, ECF No. 36-1); (Mot. Summ. J. Ex. L (Other Accidents 9-16, 17-29, 30-32, 50-61), ECF Nos. 36-13, 50-1); (Id. Ex. F (30(b)(6) Dep. 44-45, 47-51, 54, 56-57, 79-85), ECF No. 36-7.) All of the other employees involved in accidents who were disciplined in some fashion were at-fault in some way in the accident. Employee A, an African American employee, was involved in an accident after servicing a frontload container. (Id. Ex. L (Other Accidents 11-13), & Ex. F (30(b)(6) Dep. 77), ECF Nos. 50-1, 36-7.) Employee A received additional safety coaching after backing into a vehicle that was located in his blind spot and being driven erratically. (Id. Ex. L (Other Accidents 11-13), & Ex. F (30(b)(6) Dep. 77), ECF Nos. 50-1, 36-7.) Employee B, an African American employee, received additional safety coaching after sideswiping an unoccupied vehicle in a

7

tight parking lot as he was approaching a frontload container. (Id. Ex. L (Other Accidents 25-30), & Ex. F (30(b)(6) Dep. 79-80), ECF Nos. 50-1, 36-7.) Employee C, an African American employee, was terminated for "using equipment incorrectly and in an un-safe way," which caused $20,000 worth of damage to one of Defendants' roll-off trucks. (Mot. Summ. J. Ex. L (Other Accidents 58-61), ECF No. 50-1.) Employee D, a Caucasian employee, received additional safety coaching for failing to pull forward far enough and backing into an unoccupied parked car. (Id. Ex. L (Other Accidents 50-56), & Ex. F (30(b)(6) Dep. 44-45, 80), ECF Nos. 50-1, 36-7.) Employee E, a Caucasian employee, received additional safety coaching and a final warning after rear-ending a vehicle in front of him while hauling a compactor to a customer site. (Id. Ex. L (Other Accidents 17-24), & Ex. F (30(b)(6) Dep. 47, 80-81), ECF Nos. 50-1, 36-7.) The vehicle Employee E was operating at the time of the accident was not his primary vehicle. (Id. Ex. L (Other Accidents 17-24), & Ex. F (30(b)(6) Dep. 47, 80-81), ECF Nos. 50-1, 36-7.) However, in 2022, Employee E's employment was terminated after he caused another accident. (Id. Ex. L (Other Accidents 17-24), & Ex. F (30(b)(6) Dep. 47, 80-81), ECF Nos. 50-1, 36-7.)

Employee F, a Caucasian employee, received additional safety coaching after striking another vehicle located in his passenger-side blind spot as he was turning right at an intersection. (Mot. Summ. J. Ex. L (Other Accidents 2-8), & Ex. F (30(b)(6) Dep. 81), ECF Nos. 50-1, 36-7.) Employee G, a Caucasian employee, received additional safety coaching for backing into an unoccupied parked trailer while servicing a frontload container with a vehicle that he had never before operated. (Id. Ex. L (Other Accidents 44-49), & Ex. F (30(b)(6) Dep. 50-51), ECF Nos. 50-1, 36-7.) In addition, Employee G received additional safety coaching for another accident when he struck the side of a pickup truck whose driver had braked abruptly

without warning before attempting to turn off the highway.  (Id. Ex. L (Other Accidents 33-43),

& Ex. F (30(b)(6) Dep. 54), ECF Nos. 50-1, 36-7.)  Employee H, a Caucasian employee, was

terminated for hitting an unoccupied parked vehicle at a customer site.  (Id. Ex. F (30(b)(6) Dep.

56-57), ECF No.36-7.)

## II.  REPORT AND RECOMMENDATION

First, Magistrate Judge McDonald recommends granting Defendants' motion for

summary judgment on the Title VII and § 1981 race discrimination claims because Manning

cannot show that similarly situated employees outside the protected class received more

favorable treatment than he, nor can he prove any inference that his employment was terminated

because of his race.  (R&R 15-17, ECF No. 52.)  In addition, Magistrate Judge McDonald

recommends granting Defendants summary judgment on Manning's claim of racial

discrimination with respect to the way Defendants assigned trucks to drivers because the method

of assigning trucks did not constitute an adverse employment action.  (Id. at 18-19, ECF No.

52.)  Second, Magistrate Judge McDonald recommends granting Defendants' motion for

summary judgment on the Title VII retaliation claim because Manning failed to provide

sufficient evidence to establish that he engaged in a protected activity and, even if he could

show he engaged in protected activity, Manning has failed to show any causal connection

between the protected activity and Defendants' actions, both of which are required elements for

a Title VII retaliation claim.  (Id. at 26-27, ECF No. 52.)

### III. DISCUSSION OF THE LAW

#### A. Summary Judgment Standard

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding whether a genuine issue of material fact exists, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in his favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

A litigant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." Monahan v. Cnty. of Chesterfield, 95 F.3d 1263, 1265 (4th Cir. 1996). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Ballenger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987) (emphasis in original).

#### B. Objections to the Report and Recommendation

Manning filed objections to the Report and Recommendation. Objections to the Report and Recommendation must be specific. Failure to file specific objections constitutes a waiver of a party's right to further judicial review, including appellate review, if the recommendation

is accepted by the district judge.  See United States v. Schronce, 727 F.2d 91, 94 & n.4 (4th Cir. 1984).  In the absence of specific objections to the Report and Recommendation of the magistrate judge, this court is not required to give any explanation for adopting the recommendation.  See Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983).

Some of Manning's objections are non-specific or merely restate and reargue his claims.  However, Manning specifically objects to the magistrate judge's finding that Manning failed to establish a prima facie case of race discrimination or raise any inference that Defendants' proffered reasons for termination were pretext, arguing that genuine issues of material fact exist regarding "whether white employees were treated more favorably than [he]."  (Objs. 2, ECF No. 54.).  In addition, Manning objects that the magistrate judge erred in finding that Manning's deposition testimony established that race did not motivate his termination.[3]

To establish a prima facie case of discriminatory discipline, Plaintiff must show: "(1) that he is a member of the class protected by Title VII, (2) that the prohibited conduct in which he engaged was comparable in seriousness to misconduct of employees outside the protected class, and (3) that the disciplinary measures enforced against him were more severe than those enforced against those other employees."  Cook v. CSX Transp. Corp., 988 F.2d 507, 511 (4th Cir.1993); Hoyle v. Freightliner, LLC, 650 F.3d 321, 336 (4th Cir. 2011).  After establishing a prima facie case, the burden then shifts to Defendants to articulate some "legitimate, nondiscriminatory reason" for the actions against Plaintiff.  Texas Dep't of Cmty. Affairs v.

---

[3]Manning did not object to the magistrate judge's recommendation to grant summary judgment on his claim of racial discrimination based on the assignment of trucks.  Further, Manning did not object to the magistrate judge's recommendation to grant summary judgment on the retaliation claim.

Burdine, 450 U.S. 248, 253 (1981). If Defendants demonstrate a legitimate, nondiscriminatory reason for their decision, Manning must then show that Defendants' stated reason is mere pretext for unlawful discrimination. Id. "The plaintiff always bears the ultimate burden of proving that the employer intentionally discriminated against [him]." Evans v. Tech. Applications & Serv. Co., 80 F.3d 954, 959 (4th Cir. 1996).

Under the third element of the prima facie case, Manning objects to the magistrate judge's finding that he cannot show that Caucasian drivers were treated more favorably than he. (Objs. 3-4, ECF No. 54.) Valid comparators are individuals who "are similar in all relevant respects." Haywood v. Locke, No. 09-1604, 2010 WL 2711294, at *3 (4th Cir. July 6, 2010) (unpublished). Courts look to whether "the plaintiff and comparator dealt with the same supervisor, [were] subject to the same standards and … engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Haynes v. Waste Connections, Inc., 922 F.3d 219, 223-24 (4th Cir. 2019) (citations and internal quotation marks omitted). Manning has identified several valid comparators. Manning objects that there are genuine issues of material fact regarding whether those comparators were treated more favorably than Manning. The court disagrees.

A review of the record reveals, as the magistrate judge noted, that Caucasian drivers and African American drivers were subjected to a range of discipline for at-fault accidents involving Defendants' trucks. Some Caucasian drivers were treated more favorably than Manning, and some were terminated. Likewise, some African American drivers were treated more favorably than Manning, and some were terminated. Among African American drivers, two received additional safety coaching, and two (including Manning) were terminated. Among Caucasian

drivers, three received additional safety coaching, a fourth received safety coaching after one accident before being terminated after another accident, and a fifth was immediately terminated. There are no genuine issues of material fact that Manning's termination fell within a range of discipline imposed on Caucasian employees for accidents involving the trucks. Thus, "there was no disparity of treatment from which one could conclude that [Manning's] discipline was a product of [illegal] discrimination." CSX Transp. Corp., 988 F.2d at 511-12 ("On the basis of all the disciplinary records presented, the district court correctly concluded that CSX imposed a range of discipline for Rule 500-type violations within which [plaintiff's] discharge fell and that therefore there was no disparity of treatment from which one could conclude that his discipline was a product of racial discrimination."); Lauture v. Saint Agnes Hosp., 429 F. App'x 300, 306 (4th Cir. 2011) (unpublished) ("Even if [plaintiff] is correct that some of the Caucasian, U.S.-born medical technicians were treated more favorably and not suspended or retrained for committing laboratory errors, the termination of two Caucasian, U.S.-born lab technicians was more severe than the suspension and retraining imposed on [plaintiff]. Thus, [plaintiff's] discipline was within the 'range of discipline' that St. Agnes typically imposed for laboratory errors, and 'there was no disparity of treatment from which one could conclude that [plaintiff's] discipline was the product of racial [or national-origin] animus.'"); McDougal-Wilson v. Goodyear Tire & Rubber Co., 427 F. Supp. 2d 595, 610 (E.D.N.C. 2006) ("Here, the discipline that [plaintiff] received fell within the same range as white-male managers. Thus, [plaintiff] has failed to establish a prima facie case of discriminatory discipline."); Smalls v. Richland Cnty. Recreation Comm'n, No. CV 3:19-1741-PJG, 2020 WL 3037116, at *3 (D.S.C. June 5, 2020) (unpublished) ( Plaintiff "proffered numerous comparators who she contend[ed] also falsified

their nepotism checklists but were disciplined less severely, or not at all.  However, even assuming these employees committed comparably serious offenses to permit an apt comparison, the plaintiff's list of putative comparators includes other females and other African Americans, undermining any inference that the Recreation Commission was motivated by either race or sex.").

Based on the foregoing, Manning cannot satisfy the third element of the prima facie case – that he was disciplined more severely than similarly situated employees outside the protected class.  Moreover, there is no inference that can be drawn from the record that Defendants' decision to terminate Manning was motivated by his race.

Even if he could show a prima facie case, Defendants have offered a legitimate, nondiscriminatory reason for Manning's termination, and Manning cannot show that Defendants' stated reason is pretext for discrimination.  Manning objects, arguing that "[a] reasonable jury could find that Defendants' stated reason for Plaintiff's termination—causing a collision—was pretext for discrimination based on comparator evidence, the subjective 'holistic' view of the incident, and Messinger's testimony." (Objs 3-4, ECF No. 54.)  Manning submits that Mr. Messinger's testimony that Manning violated Defendants' policy regarding checking blind spots in light of his later testimony that he did not know if Manning checked his mirrors is evidence of pretext in the context of the subjective criteria utilized to determine discipline for accidents.  (Id. 3, ECF No. 54.)  It is undisputed that Manning backed his truck into another company's truck, which was occupied at the time, at a transfer station, causing significant damage to the other truck, including a cracked windshield and dented frame.

(Mot. Summ. J. Ex. B (Manning Dep. 87-88), ECF No. 36-3.)  Manning's at-fault accident undisputedly violated provisions of the Employee Handbook and Code of Conduct concerning satisfactory work performance and carelessness in addition to safety rules and regulations set forth in the Safety Manual.  (Id. Ex. A (Employee Handbook) & Ex. D (Safety Manual), ECF Nos. 36-2, 36-5.)  Defendants undertook a review of the incident by speaking with Manning, reviewing the police report, and speaking with the owner of the other truck.  (Id. Ex. F (30(b)(6) Dep. 21), ECF No. 36-7.)  Mr. Messinger testified that the decision to terminate Manning was based on the severity of the accident, Manning's violation of Defendants' backing policy, and the facts that the accident occurred at a transfer station, a place known to have "a high[] frequency of accidents,", and that the other truck was occupied, meaning there was a potential for injury.  (Id. Ex. F (30(b)(6) Dep. 18, 21, 23-24), ECF No. 36-7.)

Based on the foregoing, Manning fails to put forth sufficient evidence to raise any inference that Defendant's proffered reason for termination, Manning's at-fault accident, was false or pretextual.  Holland v. Washington Homes, Inc., 487 F.3d 208, 215 (4th Cir. 2007) (affirming grant of summary judgment where plaintiff failed to "put forth sufficient evidence showing that [defendant's] proffered legitimate explanation was false"); Johnson v. Old Dominion Univ., 814 F. App'x 733, 738 (4th Cir. May 14, 2020) (unpublished) ("[S]uspicions of ill intent are insufficient to create a genuine issue of material fact regarding pretext.").

Manning's third objection is that the magistrate judge erred in considering Manning's testimony that he lacked knowledge of what motivated his termination.  (Objs. 4, ECF No. 54.)  Manning plainly testified that he did not know what motivated the decision to terminate his employment.  (Mot. Summ. J. Ex. B (Manning Dep. 114-15), ECF No. 36-3.)  The court did

not consider Manning's refusal to speculate as to why he was terminated as a basis for granting summary judgment. As set forth above, there is substantial evidence of a legitimate, nondiscriminatory reason for Manning's termination, and Manning has failed to raise any genuine issue of material fact that Defendants' stated reasons were pretext for racial discrimination. Williams v. Cerberonics, Inc., 871 F.2d 452, 456 (4th Cir. 1989) ("[A] plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate nondiscriminatory reasons for an adverse employment action.").

Therefore, after a thorough review of the magistrate judge's report and the record in this case, the court adopts Magistrate Judge McDonald's Report and Recommendation and incorporates it herein.

Therefore, it is

**ORDERED** that Defendants' motion for summary judgment, docket number 36, is granted.

**IT IS SO ORDERED**.

s/Henry M. Herlong, Jr.
Senior United States District Judge

Greenville, South Carolina
April 25, 2023

### NOTICE OF RIGHT TO APPEAL

The Plaintiff is hereby notified that he has the right to appeal this order within thirty (30) days from the date hereof, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.